# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-09-00140-CV

**John Crain, Appellant**

**v.**

**Hartford Insurance Company and Texas Department of Insurance
Division of Workers' Compensation, Appellees**

## FROM THE DISTRICT COURT OF BLANCO COUNTY, 424TH JUDICIAL DISTRICT
## NO. CV-05952, HONORABLE DANIEL H. MILLS, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

Appellee Hartford Insurance Company filed suit against Appellant John Crain for judicial review of a decision of the Division of Workers' Compensation of the Texas Department of Insurance that Hartford was liable for Crain's spinal surgery.[1] Hartford filed a motion for summary judgment asserting that it was not liable for the spinal surgery because Crain had waived his right to seek administrative review of Hartford's decision to deny preauthorization for the surgery. Crain then filed counterclaims for declaratory judgment. The trial court granted Hartford's

---

[1] The underlying events, as explained below, date back to 2003 and involve administrative actions by the Texas Workers' Compensation Commission. Effective September 1, 2005, the legislature abolished the Commission and transferred its statutory responsibilities and rules to the Division. *See* Act of May 29, 2005, 79th Leg., R.S., ch. 265, §§ 8.001(b), .004(a), 2005 Tex. Gen. Laws 607, 608. For clarity and simplicity, we will use "the Division" to refer to both the former and successor entities.

motion and, at a later hearing, dismissed Crain's counterclaims for lack of subject-matter jurisdiction. Because we hold that Crain failed to timely file his request for administrative review of Hartford's preauthorization denial and because the trial court lacked subject-matter jurisdiction over Crain's claims for declaratory judgment, we will affirm the trial court's judgment.

## BACKGROUND

Crain suffered a compensable injury to his back while at work on January 8, 2003. Hartford was the workers' compensation insurance carrier for Crain's employer. Dr. Lloyd Youngblood, Crain's neurosurgeon, sought preauthorization from Hartford on October 3, 2003 to perform spinal surgery as treatment for Crain's compensable injury.[2] Hartford asked an orthopedic surgeon to review Dr. Youngblood's preauthorization request. When Hartford's doctor determined that the requested spinal surgery was not medically necessary, Hartford denied Dr. Youngblood's request for preauthorization on October 9, 2003.

On October 31, 2003, Dr. Youngblood submitted another request for preauthorization of the spinal surgery for Crain. The diagnosis and surgical procedure requested by Dr. Youngblood in this request were identical to the diagnosis and surgical request in the previously denied October 3, 2003 request. Hartford asked a different surgeon to review this request, and he likewise determined that the spinal surgery was not medically necessary, so Hartford again denied

---

[2] Although an employee who sustains a compensable injury is entitled to all health care reasonably required for the injury, a health care provider (or the injured worker) must obtain express authorization or approval for certain specified medical procedures, including spinal surgery, in advance of the procedure. *See* Tex. Lab. Code Ann. §§ 401.011(31) (West Supp. 2010), 408.021(a), 413.014(b) (West 2006). The labor code describes this advance authorization requirement as "preauthorization." *See* Tex. Lab. Code Ann. § 413.014 (West 2006).

2

preauthorization on November 11, 2003. Hartford's surgeon notified Dr. Youngblood directly of the denial and, according to Hartford's surgeon's notes, Dr. Youngblood expressed an intent to try a different medical procedure on Crain.

On January 2, 2004, Dr. Youngblood submitted a third request for preauthorization of the spinal surgery for Crain. The diagnosis and requested surgery in this request were again identical to the diagnosis and surgery in the previous two requests. Hartford asked the same surgeon to review this request. He again determined that the requested spinal surgery was not medically necessary and notified Dr. Youngblood's office directly of his decision. Hartford also sent a letter denying this preauthorization request.

Almost five months later, on May 21, 2004, Dr. Youngblood submitted a fourth request for preauthorization. The diagnosis and requested spinal surgery were identical to those described in the previous three requests. Hartford notified Dr. Youngblood's office that it would not review this request because Crain had failed to timely request reconsideration of Hartford's previous denial as required by the Division's rules.

Finally, on June 11, 2004, Dr. Youngblood submitted a fifth request for preauthorization. Again, the diagnosis and surgical procedure in this request were identical to Dr. Youngblood's previous four requests for preauthorization. Hartford called Dr. Youngblood's office on June 11, 2004 to inform him that Hartford would not process this request because it was untimely.

3

*Administrative Review of Preauthorization Request*

On June 28, 2004, Crain filed a request for a medical dispute resolution ("MDR") with the Division, seeking an independent review organization ("IRO") review of Hartford's denial of preauthorization for Crain's spinal surgery. *See* 28 Tex. Admin. Code § 134.600 (2003) (Tex. Workers' Compensation Comm'n, Pre-authorization), *amended by* 29 Tex. Reg. 2349 (2004), *amended by* 31 Tex. Reg. 3566 (2006) (hereinafter "Former 28 Tex. Admin Code § 134.600"). Hartford argued to the Division that it should deny Crain's request for MDR because it was filed more than forty-five days after Hartford had denied reconsideration of Crain's preauthorization request. *See* 28 Tex. Admin. Code § 133.308(e) (2004) (Div. of Workers' Compensation, Dispute and Audit of Bills by Ins. Carriers), *amended by* 29 Tex. Reg. 8562 (2004), *replaced by* 31 Tex. Reg. 30314 (2006) (hereinafter "Former 28 Tex. Admin. Code § 133.308"). The Division granted Crain's MDR request and referred the dispute to an IRO. The IRO reviewed Crain's file, determined that the spinal surgery was medically necessary, and approved Crain's request for preauthorization.

After the IRO's decision, Hartford filed a request for a contested case hearing with the Division. *See id.* § 133.308(v). After a full hearing on the merits, the hearing officer for the contested case hearing held that Crain had not waived his right to MDR and that a preponderance of the evidence supported the IRO reviewer's determination that the requested spinal surgery was medically necessary. Hartford appealed the hearing officer's decision to the Division's appeals panel. The appeals panel did not issue its own decision, but instead allowed the hearing officer's decision to become the final decision of the appeals panel by operation of law. *See* Tex. Lab. Code Ann. § 410.204(c) (West 2006). Because the affirmed hearing officer's decision was binding on the

4

parties during the pendency of any appeal, *see* Tex. Lab. Code Ann. § 410.205 (West 2006), Crain received and Hartford paid for the disputed spinal surgery.

### District Court Proceedings

Hartford filed this case seeking judicial review of the appeals panel decision. *See* Tex. Lab. Code Ann. § 410.251-.258 (West Supp. 2010).[3] Hartford seeks judgment here that it is not liable for the costs of Crain's spinal surgery, but Hartford's objective is reimbursement for the costs of Crain's surgery from the Subsequent Injury Fund ("SIF"). The SIF is a dedicated account in the general revenue fund used only for purposes specified by statute, including reimbursement to an insurance carrier for overpayment of benefits made under an interlocutory order of the Division. Tex. Lab. Code Ann. § 403.006 (West Supp. 2010); 28 Tex. Admin. Code § 116.11(a) (West 2010) (Tex. Dep't Ins., Request for Reimbursement from the Subsequent Injury Fund). Because Hartford can seek reimbursement from the SIF if it is determined that Hartford it is not liable for the costs of Crain's surgery, Crain is not liable for any payments Hartford made on his behalf prior to the appeals panel's decision being overturned. *See* Tex. Lab. Code Ann. § 410.209 (West 2006); *see also Wolford v. American Home Assurance Co.*, 263 S.W.3d 12, 17 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

---

[3] Soon after Hartford filed this suit, Crain filed a plea to the jurisdiction alleging that Hartford failed to file its petition within thirty days of when the appeals panel's decision was filed with the Division. The trial court granted Crain's plea to the jurisdiction, but we reversed on appeal and remanded the case for further proceedings. *See Hartford Ins. Co. v. Crain*, 246 S.W.3d 374 (Tex. App.—Austin 2008, no pet.).

Hartford moved for summary judgment on its assertion that Crain had waived his right to administrative review by failing to timely file his request for MDR. Crain responded by asserting that Hartford's evidence raised material issues of fact regarding waiver. He also filed counterclaims for declaratory judgment regarding Hartford's claims and the interpretation and application of the Texas Workers' Compensation Act ("TWCA"), *see* Tex. Lab. Code Ann. §§ 401.001 - 506.002 (West 2006 and West Supp. 2010). The trial court granted Hartford's motion for summary judgment, reversed the Division's decision, and ordered that Hartford was not liable for the cost of Crain's surgery.

Shortly after the trial court granted summary judgment, Hartford filed a plea to the jurisdiction on Crain's claims for declaratory judgment. In response, Crain amended his counterclaims for declaratory judgment by adding the Division as a third-party defendant. The Division filed its own plea to the jurisdiction and answer. The trial court granted Hartford's plea to the jurisdiction and dismissed Crain's counterclaims for declaratory judgment for lack of subject-matter jurisdiction, thus rendering its earlier partial summary judgment final.

## DISCUSSION

In four issues on appeal, Crain contends that the trial court erred by granting Hartford's motion for summary judgment and by dismissing his claims for declaratory judgment.

### *Summary Judgment*

Crain asserts that summary judgment was improper because (1) Hartford's evidence raised factual disputes regarding Crain's alleged waiver, (2) the summary judgment limited or

6

terminated, in violation of the TWCA, Crain's right to lifetime medical care under the TWCA, and (3) a health care provider's actions may not waive an injured worker's rights to lifetime medical care under the TWCA.

*(i) Standard of Review*

Because the issues here ultimately involve matters regarding compensability and medical benefits, judicial review of the Division's decision is under a modified de novo standard. *See* Tex. Lab. Code Ann. § 410.301 (West 2006); *see also Morales v. Liberty Mut. Ins. Co.*, 241 S.W.3d 514, 519 (Tex. 2007). Under modified de novo review, all issues regarding compensability must be tried by the jury or the trial court, *Texas Workers' Compensation Commission v. Garcia*, 893 S.W.2d 504, 528 (Tex. 1995), but the "trial is limited to the issues decided by the appeals panel and on which judicial review is sought" and the pleadings must specifically set forth the determinations of the appeals panel for which review is sought, Tex. Lab. Code Ann. § 410.302(b) (West 2006). In the present case, Hartford sought review of the appeals panel's determination that a preponderance of the evidence supported the IRO's determination that Crain's spinal surgery was medically necessary, and that Crain did not waive his right to administrative review of Hartford's preauthorization denial by failing to timely file a request for MDR. The party appealing the appeals panel decision, here Hartford, has the burden of proof by a preponderance of the evidence. Tex. Lab. Code Ann. § 410.303 (West 2006). The trial court, although informed of the appeals panel's decision, is not required to accord it any particular weight. *Morales*, 241 S.W.3d at 516; *Garcia*, 893 S.W.2d at 515. Further, because it is a de novo review, new evidence—i.e., other than that presented to the hearing officer—is admissible at trial. *In re*

7

*Ward*, 264 S.W.3d 119, 120-21 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Thus, the trial court does not review the appeals panel decision for "reasonableness," but rather independently decides the issues by a preponderance of the evidence. *Garcia*, 893 S.W.2d at 531.

We review the trial court's decision to grant summary judgment de novo. *Valance Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In a traditional motion for summary judgment, the movant has the burden of showing that no genuine issue of material fact exists as to any element of its claim and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *TX Far W., Ltd. v. Texas Invs. Mgmt., Inc.*, 127 S.W.3d 295, 301 (Tex. App.—Austin 2004, no pet.) (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985)). If the movant's motion and summary-judgment proof facially establish the right to judgment as a matter of law, the burden shifts to the non-movant to raise a material fact issue sufficient to defeat summary judgment. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.—Austin 2000, no pet.). We take as true all evidence favorable to the non-movant and indulge every reasonable inference and resolve any doubts in the non-movant's favor. *TX Far W., Ltd.*, 127 S.W.3d at 301.

*(ii) Waiver of Medical Dispute Resolution*

We begin by addressing Crain's assertion that summary judgment was improper because the evidence raised questions of fact regarding Hartford's claim that Crain, by failing to file an MDR request within forty-five days of Hartford's denial of reconsideration, had waived his right to administrative review of Hartford's preauthorization denial. Before addressing Crain's contention, however, we will first review the Division's preauthorization procedures.

8

When presented with a request for preauthorization, the carrier must review the request and, based on reasonable medical necessity, either deny or approve the request in writing. *See* Former 28 Tex. Admin. Code Ann. § 134.600(f). If the carrier denies the request, the health care provider or injured worker "may request reconsideration of the denied health care" within fifteen working days of the receipt of the written denial. *Id*. § 134.600(g). The carrier has five working days to respond to a request for reconsideration. *Id.* If the carrier denies reconsideration of the preauthorization request, the health care provider or injured worker may appeal the denial to the Division by requesting MDR by an IRO within forty-five days of the carrier's denial of reconsideration. Former 28 Tex. Admin. Code § 133.308(e)(2).[4] Failure by an injured worker or his health care provider to timely request review of the carrier's denial "waives the right to independent review or medical dispute resolution." *Id.* § 133.308(e). The effect of waiver under this provision is that the carrier is not liable for the cost of the requested procedure. *See* Division Appeal No. 050557, 2005 WL 1541172, at *3 (May 2, 2005); Division Appeal No. 042926-s, 2005 WL 864851, at *3 (January 4, 2005).

In its motion for summary judgment, Hartford asserted that the evidence attached to its motion conclusively proved that Crain had waived his right to administrative review of Hartford's denial of his request for reconsideration by failing to file a request for MDR within forty-five days of Hartford's denial of reconsideration. As a result of this waiver, Hartford argued that it was

---

[4] If the injured worker's medical condition substantially changes after the denial of a request for preauthorization, the injured worker or his health care provider may resubmit the preauthorization request, along with "objective clinical documentation to support a substantial change in the employee's medical condition," to the carrier for review. *See* 28 Tex. Admin. Code § 134.600(o)(4) (West 2010).

9

entitled to judgment that it was not liable for the costs of Crain's spinal surgery as a matter of law. Specifically, Hartford asserted that the evidence attached to its motion—including the preauthorization requests, Hartford's denials of those requests, doctors' notes, and the hearing officer's findings and conclusions—established that (1) Dr. Youngblood submitted a request for preauthorization on October 3, 2003, (2) Hartford denied that request on October 9, 2003, (3) Dr. Youngblood submitted the identical preauthorization request on October 31, 2003, (4) Hartford denied that request on November 11, 2003, and (5) Crain did not request an MDR until June 2004. Hartford argued that, based on Division rules regarding preauthorization and MDR requests, Dr. Youngblood's October 31, 2003 request was a request for reconsideration of the October 3 request and, therefore, Crain waived his right to appeal Hartford's denial of that request for reconsideration when he failed to request MDR within forty-five days of Hartford's November 11, 2003 denial of that request for reconsideration.

Crain did not dispute Hartford's evidence—i.e., that Dr. Youngblood made the various requests on the dates indicated, that Hartford denied those requests on the dates indicated, or that he did not request an MDR until June 2004. Instead, Crain argued that Hartford's evidence raised a question of fact regarding waiver and regarding the characterization of Dr. Youngblood's requests and Hartford's responses to those requests. Specifically, Crain asserted that (1) the hearing officer's finding that Crain had not waived his right to MDR raised a question of fact as to waiver, (2) Dr. Youngblood "withdrew" the October 31, 2003 request for preauthorization, (3) the January 2, 2004 request was not a request for reconsideration of Dr. Youngblood's previous request for preauthorization, but was a new preauthorization request because Dr. Youngblood had withdrawn

10

the previous request; (4) Hartford failed to present evidence that it sent written denials of the preauthorization requests in compliance with Division rules, and (5) Dr. Youngblood's May 21, 2004 request was not a request for reconsideration of a previous preauthorization request, but was a new request and, therefore, was subject to the newly amended Division rule 134.600. Crain did not attach any evidence to support his response to Hartford's motion, but instead relied on Hartford's summary-judgment evidence.

On appeal, Crain argues that because his characterization of some of the preauthorization requests—i.e., as either reconsideration requests or "new" requests for preauthorization—differs from Hartford's characterization, there is necessarily a question of fact as to which characterization is correct. We disagree. The characterization of those requests is a question of law that we decide de novo by applying the relevant statutes and rules to the facts established by those requests to determine their legal effect. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) (explaining that statutory interpretation is a question of law).

The preauthorization requests established the following undisputed facts: (1) the date each request was made, (2) the identity of the parties involved with each request, (3) the diagnosis on which each request was based, and (4) the medical procedure for which preauthorization was sought. Further, other summary-judgment evidence shows that Hartford denied both of the October requests and that Crain did not seek MDR until June 2004. To determine the characterization and effect of Dr. Youngblood's requests for preauthorization, we must analyze and interpret former Division rules 134.600 and 133.308. We construe administrative rules in the same manner as statutes since they have the force and effect of statutes. *Rodriguez v. Service Lloyds Ins. Co.*,

11

997 S.W.2d 248, 254 (Tex. 1999). The text of rules, like statutes, is the first and foremost means of achieving our primary objective: ascertaining and giving effect to the intent of the body that enacted them. *Shumake*, 199 S.W.3d at 284. We must read the rule as a whole and not just in isolated portions, giving meaning to language consistent with its other provisions. *See Texas Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004). We rely on the plain meaning of the text, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008); *see* Tex. Gov't Code Ann. § 311.011 (West 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). We must presume that the entire enactment was intended to be effective. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 86 (Tex. 2006).

Former Division rule 134.600(g) provides that "[i]f the [carrier's] response is a denial of preauthorization the [health care provider or injured worker] may request reconsideration of the denied health care," and the carrier "shall respond to the requests for reconsideration" within five working days. Former 28 Tex. Admin. Code § 134.600(g). Former Division rule 133.308(e) provides that a request for MDR "shall be considered timely if it is filed with the division no later than the forty-fifth day after the date the carrier denied approval of the party's request for reconsideration of denial of healthcare that requires preauthorization." Former 28 Tex. Admin. Code § 133.308(e). Neither "reconsideration" nor "request for reconsideration" are defined in the rules, however, the verb "reconsider" means "to consider again" or "to think over, discuss, or debate esp[ecially] with a view to changing or reversing." *Webster's Third New Int'l Dictionary* 1897

12

(2002). The rules do not require that a preauthorization request or a reconsideration request be labeled as such, but it must be documented. *See* Former 28 Tex. Admin. Code § 134.600(g)(1). Thus, the plain meaning of a "request for reconsideration" under the Division's rules is a document from a health care provider or injured worker asking an insurance carrier to think over or consider *again* a previous request for preauthorization, with a view to changing the denial to an approval.

According to the summary-judgment documents submitted in support of Hartford's motion, Dr. Youngblood's first request for preauthorization to Hartford, which was sent on October 3, 2003, is identified as a "Surgery Auth" and includes the following information related to diagnosis and procedure:

> Diagnosis: Lumbar HNP left L3-4; lum-spinal stenosis; lumbar disc protrusion L2-5 & DDD
>
> Estimated Diagnosis ICD-9 Codes: 722.10, 724.02, 722.52.
>
> Procedure: L2-S1 Decompressive Lumbar Laminectomy foraminotomy posterolateral fusion with Steffee pedicle screws iliac crest bone graft, posterior lateral interbody fusion with Brantigan cages & Dynagraft
>
> Estimated Procedure CPT Codes: 63047, 63048, 22612, 22614X3, 22842, 20937, 22630, 22632X3, 22851X4, 20937

Hartford denied this request on October 9, 2003. Dr. Youngblood's next request, which was dated October 31, 2003, is also entitled "Surgery Auth" and appears to be a photocopy of the October 3, 2003 request, although the date was changed and some handwritten notations were added. Regardless, however, the diagnosis, estimated diagnosis codes, procedure, and estimated procedure codes on this request are identical to the October 3, 2003 request. Hartford denied this request on November 6, 2003.

It is undisputed that Dr. Youngblood made one diagnosis and requested a specific procedure on October 3, 2003. After that request was denied, Dr. Youngblood made the identical diagnosis and requested the identical procedure *again* on October 31, 2003. Based on the plain meaning of the Division's rules, a request for preauthorization that includes the identical diagnosis, diagnosis codes, procedure, and procedure codes as a previously denied request for the same patient and by the same doctor is a request to reconsider the previously denied request for preauthorization. This conclusion is supported by the provision in the rules allowing for *resubmission* of preauthorization requests only in the event of a substantial change in the employee's medical condition. *See* Former 28 Tex. Admin. Code § 134.600(g)(4); *see also* 29 Tex. Reg. 2349, 2350 (2004) (explaining intent of Division in promulgating section 134.600(g) was to prevent resubmissions of identical requests). Accordingly, we hold that Dr. Youngblood's October 31, 2003 request for preauthorization was a "request for reconsideration" under former rules 134.600(g) and 133.308(e). Therefore, because neither Crain nor his health care provider requested MDR within forty-five days of Hartford's denial of the request for reconsideration, Crain waived his right to administrative review and Hartford is not liable for the costs of his spinal surgery. *See* Former 28 Tex. Admin. Code § 133.308(e)(2); Division Appeal No. 050557 at *3.[5]

The remaining requests for preauthorization from Dr. Youngblood that were attached to Hartford's motion—i.e., the January 2, 2004, May 21, 2004, and June 11, 2004 requests—also

---

[5] Because we hold that Crain waived his right to MDR by failing to file a request for MDR within forty-five days of Hartford's November 6, 2004 denial of Crain's October 31, 2003 request for reconsideration, we need not address Crain's contentions that Hartford failed to provide evidence of a written denial of Crain's January 2, 2004 request for preauthorization.

include the identical diagnosis, diagnosis codes, procedure, and procedure codes as the October 3, 2003 request. Accordingly, they too are requests for reconsideration of the October 3, 2003 request. As such, Crain waived administrative review of these requests by failing to timely request MDR.

Crain also argues on appeal that the hearing officer's determination that Crain did not waive his right to MDR created a fact issue precluding summary judgment on Hartford's waiver claim. We disagree. Evidence of the hearing officer's findings is not evidence that Crain waived or did not waive his right to MDR. It is merely evidence of what the hearing officer decided based on the evidence presented to him at the administrative hearing. A trial court in a modified de novo review of a hearing officer's decision may be presented with additional or different evidence than that reviewed by the hearing officer, *see In re Ward*, 264 S.W.3d at 120-21, and must decide summary judgment based on the evidence before it, *see* Tex. R. Civ. P. 166a(c).[6]

Crain also argues that Dr. Youngblood's January 2, 2004 request should be considered a "new" request because Dr. Youngblood had "withdrawn" his October 31, 2003 preauthorization request. The basis for this contention appears to be the hearing officer's finding of fact on that issue. But again, those findings are only evidence of the hearing officer's findings; they are not evidence that Dr. Youngblood withdrew his October 31, 2003 request for preauthorization. In contrast, the summary-judgment evidence submitted by Hartford established that Dr. Youngblood made each of the identical preauthorization requests on the dates indicated.

---

[6] Although the labor code allows for the admission of the administrative record in a judicial review, *see* Tex. Lab. Code Ann. § 410.302(a), it appears from the appellate record before us that neither party sought admission of the administrative record in this case.

15

Thus, the burden shifted to Crain to raise a fact issue regarding whether Dr. Youngblood subsequently withdrew one of the requests. *See Casso v. Brand*, 776 S.W.2d 551, 556 (Tex. 1989). Here, Crain presented no evidence that Dr. Youngblood amended or withdrew his October 31, 2003 request. Instead, Crain relied on Hartford's evidence, which does not show that Dr. Youngblood withdrew any of his requests. Thus, Crain failed to raise a question of fact on this issue.

Crain also argues that the trial court applied the incorrect version of Division rule 134.600. Specifically, Crain asserts that the 2004 amendments to rule 134.600 allowed Dr. Youngblood to file a "new" request for preauthorization after those amendments went into effect on March 15, 2004 without regard to his previous requests. We take Crain's argument to be that the amendments to rule 134.600, in effect, "wiped the slate clean" with regard to previously filed preauthorization requests, and thus, according to Crain, his May 21, 2004 request was a "new" preauthorization request governed by the amended rule. We disagree.

The amended rule provides that "[r]equests for preauthorization submitted prior to March 15, 2004 shall be subject to the rule in effect at the time the request was submitted." 28 Tex. Admin. Code § 134.600(n) (2004), *amended by* 31 Tex. Reg. 3566 (2006). The May 21, 2004 request was a request for reconsideration of the October 3, 2003 request. It is not an original request for preauthorization. Thus, it relates back to the original request for preauthorization, which was filed prior to March 15, 2004. Therefore, the May 21, 2004 request is subject to the prior rule.

*(iv) Issues Presented to the Trial Court*

Crain's remaining challenges to the trial court's summary judgment are that (1) the TWCA prohibits a trial court from enforcing a Division rule that limits or terminates an injured

16

worker's right to lifetime medical benefits, and (2) the TWCA does not allow a health care provider to waive an injured worker's right to lifetime medical care. Neither of these two issues was presented to the trial court in response to Hartford's motion for summary judgment. Accordingly, we cannot consider them as grounds for reversal on appeal. Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.").[7]

We overrule Crain's issues challenging the trial court's grant of summary judgment in favor of Hartford.

### Dismissal for Lack of Jurisdiction

Crain's remaining issues on appeal challenge the trial court's dismissal for lack of subject-matter jurisdiction of Crain's claims for declaratory relief. We take Crain's specific argument to be that the trial court had subject-matter jurisdiction over his declaratory-judgment actions because his pleadings assert the existence of a justiciable controversy that will be resolved by the judicial declarations he seeks.

Whether a court has subject-matter jurisdiction and whether a party has affirmatively demonstrated subject-matter jurisdiction are questions of law that we review de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In order for a court to have jurisdiction to consider a declaratory-judgment action there must be a "justiciable controversy as to

---

[7] Hartford admitted in its briefing that the trial court made no finding that Crain waived his right to "lifetime medical care." "Rather, the trial court found that Crain waived his right to have the [Division] resolve *one disputed issue*—specifically, whether Crain required a decompressive lumbar laminectomy and posterolateral fusion in late 2003 or early 2004."

the rights and status of the parties," and the judicial declaration sought must actually resolve the controversy. *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163-64 (Tex. 2004). "A justiciable controversy is one in which a real and substantial controversy exists involving a genuine conflict of tangible interests and not merely a theoretical dispute." *Texas Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 153 (Tex. App.—Austin 1998, no pet.); *see also City of Euless v. Dallas/Fort Worth Int'l Airport Bd.*, 936 S.W.2d 699, 703 (Tex. App.—Dallas 1996, writ denied). The trial court may not grant declaratory relief unless the judgment will *determine* the controversy between the parties; otherwise, the court's judgment will constitute no more than an impermissible advisory opinion. *Martin v. Dosohs I Ltd., Inc.*, 2 S.W.3d 350, 353 (Tex. App.—San Antonio 1999, pet. denied); *Southwest Airlines Co. v. Texas High-Speed Rail Auth.*, 863 S.W.2d 123, 125 (Tex. App.—Austin 1993, writ denied).

In his pleadings to the trial court, Crain asserted that he was entitled to declaratory relief because (1) section 410.301 of the labor code (providing modified de novo review) applied to this case and not section 410.255 (providing review under substantial evidence standard), (2) amended Division rule 134.600, effective as of March 15, 2004, governed Crain's May 2004 preauthorization request and not the prior version of that rule, and (3) Division rule 134.600, both on its face and as applied by the trial court in Hartford's motion for summary judgment, violates the TWCA and the Texas and U.S. Constitutions by permitting an injured worker to waive his rights under the TWCA by failing to meet certain filing deadlines. As relief for these claims, Crain asked the trial court to declare (1) that this case "is governed by judicial review under . . . Section 410.301 . . . of the Texas Labor Code and not Section 410.155," (2) which version of rule 134.600

18

applies to this case, and (3) that the Division rules requiring that a request for MDR be filed within fifteen days of a denial of preauthorization—i.e., Former 28 Tex. Admin. Code §§ 134.600(g), 133.308(e)—violate the TWCA and the Texas and U.S. Constitutions because they can result in waiver of workers' compensation benefits.

We first address Crain's request for declaratory relief regarding labor code section 410.301. Presumably, the justiciable controversy here is a dispute about which section of the labor code applies to Hartford's suit for judicial review. As Crain acknowledged in his brief to this court, however, Hartford agreed that section 410.301's standard of review applied to this case. Thus, there was no conflict. Without a conflict, there was no justiciable controversy. *See Brooks*, 141 S.W.3d at 164. Accordingly, the trial court lacked subject-matter jurisdiction over Crain's request for declaratory relief as to the application of labor code section 410.301. *Id.*

Crain's remaining requests for declaratory judgment involve the applicability and validity of former Division rules 134.600(g) and 133.308(e) and the Division's authority to promulgate those rules. Crain contends that these rules are invalid because they allow—in contravention of the TWCA's guarantee of lifetime medical benefits—an injured worker to waive his right to lifetime medical benefits by failing to meet the rule's filing deadlines for MDR requests. Crain asserts that the justiciable controversy here is the "waiver of his rights to medical benefits in the nature of spinal surgery." Crain has already had the requested spinal surgery and, because the surgery was performed pursuant to the Division's interlocutory order that he was entitled to the surgery, Crain is not responsible for reimbursement. *See* Tex. Lab. Code Ann. § 410.209; *Wolford*,

19

263 S.W.3d at 17. Thus, any controversy regarding Crain's request for spinal surgery is no longer live, and is, therefore, not justiciable. *See Brooks*, 141 S.W.3d at 164.

Further, even assuming that a dispute involving his right to spinal surgery remains, the justiciable controversy here—i.e., whether the TWCA allows for waiver—was an element of Hartford's claim that Crain waived his right to MDR, which it alleged in its petition for judicial review of the appeals panel decision in favor of Crain. Thus, Crain should have asserted any defenses to Hartford's waiver claim, including that the TWCA prohibits waiver, as affirmative defenses or in response to Hartford's motion for summary judgment, but not as ancillary claims for declaratory relief. *See BHP Petroleum Co., Inc. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990) (UDJA not available to settle issues already pending before the court); *see also Charlie Thomas Ford, Inc. v. A.C. Collins Ford, Inc.*, 912 S.W.2d 271, 275 (Tex. App.—Austin 1995, writ dism'd as moot) ("The purpose of [declaratory judgment] . . . 'is to obtain a final declaration of a rule's validity *before* the rule is *applied*.'") (quoting *Rutherford Oil Corp. v. General Land Office*, 776 S.W.2d 232, 235 (Tex. App.—Austin 1989, no writ)). Finally, any existing controversy regarding Crain's waiver ceased to exist when the trial court, in rendering summary judgment for Hartford, found that Crain had waived his right to seek administrative review by failing to timely request MDR. Similarly, any controversy regarding the Division's interpretation of the TWCA and its application of the waiver rule likewise ceased to exist for the parties here when the trial court granted summary judgment on the waiver issue. *See Vista Health Plan, Inc. v. Texas Health and Human Servs. Comm'n*, No. 03-03-00216-CV, 2004 WL 1114551, at *6-8 (Tex. App.—Austin May 20, 2004, pet. denied) (mem. op.) (trial court's summary judgment eliminated controversy

remedied by requested declaratory judgment). Accordingly, the trial court correctly dismissed Crain's declaratory-judgment claims for lack of subject-matter jurisdiction. We overrule Crain's issues that challenge the trial court's dismissal of his declaratory-judgment claims for lack of subject-matter jurisdiction.

## CONCLUSION

Having determined that summary judgment was appropriate and that the trial court lacked subject-matter jurisdiction over Crain's claims for declaratory relief, we affirm the judgment of the trial court.

_____

David Puryear, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed: November 18, 2010

21