# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-16-00291-CV

**Office of the Comptroller of Public Accounts for the State of Texas; Glenn Hegar, Individually and in his Official Capacity as Comptroller of Public Accounts of the State of Texas; and Ken Paxton, Attorney General of Texas, Appellants**

**v.**

**Farshid Enterprises, L.L.C.; and Abul Hasnat, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. D-1-GN-16-000630, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The Office of the Comptroller of Public Accounts for the State of Texas; Glenn Hegar, Individually and in his Official Capacity as the Comptroller of Public Accounts of the State of Texas; and Ken Paxton, Attorney General of Texas, appeal the trial court's denial of their plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8). For the following reasons, we affirm the trial court's order denying appellants' plea to the jurisdiction with respect to appellees Farshid Enterprises, L.L.C. and Abul Hasnat's claims that challenge the constitutionality of sections of the Texas Tax Code to the extent that they seek equitable relief. We, however, reverse the trial court's order denying the plea to the jurisdiction with respect to appellees' remaining claims and dismiss those claims for lack of subject matter jurisdiction.

## BACKGROUND

Farshid Enterprises owns and operates convenience stores, and Abul Hasnat is the president and sole officer of Farshid Enterprises. The Comptroller audited Farshid Enterprises's convenience stores for compliance with sales and use tax laws for the time period June 1, 2010 through April 30, 2014. Based on the results of the audit, the Comptroller made an assessment that included a 50% penalty. *See* Tex. Tax Code § 111.061(b)(1) (authorizing additional penalty of 50% of tax due if failure to pay was "a result of fraud or an intent to evade the tax"). The amount of the assessment was determined utilizing "H.B. 11 data" and a memo from the Comptroller to audit personnel that was entitled "AP 134." *See id.* § 111.008(a) (authorizing comptroller "to compute and determine the amount of tax to be paid from information contained in the [tax] report or from any other information available to the comptroller"); *Sanadco Inc. v. Office of the Comptroller of Pub. Accounts*, No. 03-11-00462-CV, 2015 WL 1478200, at *1–2 (Tex. App.—Austin Mar. 25, 2015, pet. denied) (mem. op.) (discussing relevant statutory scheme, auditing memoranda, and "H.B. 11 data" for sales and use tax audits). Farshid Enterprises requested a redetermination, *see* Tex. Tax Code § 111.009 (providing right to redetermination), and the contested case was referred to the State Office of Administrative Hearings. In his proposal for decision dated September 22, 2015, the administrative law judge recommended that the audit assessment be affirmed, and the Comptroller adopted the proposal for decision on December 2, 2015.[1]

---

[1] The Comptroller adopted the proposal for decision with changes, but the changes are not relevant to this appeal.

2

On February 11, 2016, appellees sued appellants challenging the audit and subsequent sales tax assessment. In their "First Amended Suit in Protest, Petition for Judicial Review, Declaratory Judgment, Temporary and Permanent Injunctions," appellees sought judicial review of the Comptroller's decision under chapter 112 of the Tax Code and asserted claims under the Administrative Procedure Act, *see* Tex. Gov't Code §§ 2001.038, .171–.174, and the Uniform Declaratory Judgments Act, *see* Tex. Civ. Prac. & Rem. Code §§ 37.001–.011. Appellees alleged that AP 134 and the implementation of H.B. 11 were invalid rules and that the Comptroller had engaged in ultra vires actions. *See* Tex. Gov't Code § 2001.038 (authorizing declaratory judgment when "rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff"); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 371–73 (Tex. 2009) (describing ultra vires doctrine). Appellees also challenged the constitutionality of Texas Tax Code sections 111.0042, 111.022, 112.051, 112.052, 112.101, and 112.108. *See* Tex. Tax Code §§ 111.0042 (sampling in auditing and projecting assessments), 111.022 (jeopardy determination), 112.051 (protest payment requirement), 112.052 (taxpayer suit after payment under protest), 112.101 (requirements before injunction), 112.108 (prohibiting other actions).

Appellees' claims included that: (i) the audit was invalid and unenforceable because it utilized AP 134 that was an invalid rule; (ii) the Comptroller acted ultra vires when he implemented and enforced AP 134 and "HB 11" without adopting them in compliance with APA rule-making procedures; (iii) the Comptroller acted ultra vires when he "established 'gross underreporting' as an irrebuttable presumption of proof to impose the additional 50% penalty" under section 111.061(b) of the Tax Code, *see* Tex. Tax Code § 111.061(b), without adopting it in

3

compliance with APA rule-making procedures; (iv) sections of chapter 112 of the Tax Code "mandating prepayment of assessed taxes, penalties and interest to invoke the trial court's jurisdiction" were "unconstitutional because they impose[d] unreasonable financial barriers to access to the courts" and violated the open courts provision of the Texas Constitution, *see* Tex. Const. art. I, § 13; (v) section 111.0042 of the Tax Code was "unconstitutionally vague as written and as applied to appellees," *see* Tex. Tax Code § 111.0042; (vi) section 111.022 of the Tax Code was "unconstitutional on its face and as applied," *see id.* § 111.022; (vii) claims against Hasnat based on his personal liability under section 111.0611 of the Tax Code must be dismissed because he was not joined as a party to the underlying administrative judgment, *see id.* § 111.0611 (addressing personal liability for fraudulent tax evasion); and (viii) "[t]he Comptroller has taken Plaintiffs' property for public use without just compensation" by collecting the taxes against appellees, *see* Tex. Const. art. I, § 17. Appellees sought declaratory and injunctive relief, damages, and attorney's fees as to their claims.

Although they stated in their pleadings that a copy of the notice of protest was attached, appellees did not file a notice of protest with the Comptroller or pay the tax assessment prior to filing suit. *See* Tex. Tax Code § 112.051 (requiring payment and written protest that states "fully and in detail each reason for recovering the payment" prior to bringing taxpayer protest suit). Appellees asserted that the prepayment requirements of the Tax Code were unconstitutional and that they were financially unable to prepay the assessment prior to bringing their suit. To support this position, appellees attached to their pleadings an oath by Hasnat of appellees' inability to prepay the taxes. Appellees also argued that sovereign immunity was not implicated and that exhaustion of

4

administrative remedies was not required to invoke the trial court's jurisdiction to consider their claims. Appellees cited sections 2001.038, 2001.171, 2001.173, and 2001.174 of the APA; the UDJA; sections 112.051, 112.052, 112.101, and 112.108 of the Tax Code; and article I, sections 13 and 17 of the Texas Constitution as support for the trial court's jurisdiction over their claims. *See* Tex. Const. art. I, §§ 13, 17; Tex. Gov't Code §§ 2001.038, .171, .173, .174; Tex. Tax Code §§ 112.101, .108, .051, .052.

In their answer, appellants asserted a plea to the jurisdiction, including among their arguments that appellees' claims were barred by sovereign immunity, that chapter 112 of the Tax Code was the exclusive means available to appellees to challenge the audit and tax assessments against them, and that appellees had not complied with the jurisdictional prerequisites for bringing suit under chapter 112. After a hearing, the trial court denied the plea. This interlocutory appeal followed.

**ANALYSIS**

In two issues, appellants argue that the trial court erred when it denied their plea to the jurisdiction and that the trial court did not have subject matter jurisdiction to entertain challenges to the final tax assessment against them when the claims were presented under the APA and UDJA and not under chapter 112 of the Tax Code. Appellants contend that appellees were required to comply with chapter 112's jurisdictional prerequisites before filing suit to invoke the trial court's jurisdiction to consider their challenges to the audit and tax assessment and that appellees failed to do so.

5

*Standard of Review*

"A plea to the jurisdiction challenges the court's authority to decide a case." *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 149 (Tex. 2012). We review a plea questioning the trial court's subject matter jurisdiction de novo. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We focus first on the plaintiff's petition to determine whether the facts that were pleaded affirmatively demonstrate that subject matter jurisdiction exists. *Id.* We construe the pleadings liberally in favor of the plaintiff. *Id.* If the plaintiff has not affirmatively pleaded facts to support jurisdiction or to negate jurisdiction, the matter is one of pleading sufficiency, and the court should provide the plaintiff with the opportunity to amend its pleadings to cure jurisdictional defects. *Id.* at 226–27. "However, if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do." *Id.* at 227 (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)).

Sovereign immunity from suit deprives a court of subject matter jurisdiction and is therefore properly asserted in a plea to the jurisdiction. *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *Miranda*, 133 S.W.3d at 225–26; *see City of Dallas v. Albert*, 354 S.W.3d 368, 374 (Tex. 2011) (stating principle that "waivers of sovereign immunity or consent to sue governmental entities must generally be found in actions of the Legislature"). "It is well recognized under Texas law that there is no right to judicial review of an administrative order unless a statute provides a right or unless the order adversely affects a vested property right or otherwise violates a constitutional right." *Continental Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 397 (Tex.

6

2000); *see Andrade v. NAACP of Austin*, 345 S.W.3d 1, 11 (Tex. 2011) (considering substance of constitutional claim in reviewing plea to jurisdiction and noting that immunity was retained unless viable claim pleaded).

While sovereign immunity generally bars actions against the state absent a legislative waiver, *Sykes*, 136 S.W.3d at 638, suits against governmental officials alleging that they "acted without legal authority or failed to perform a purely ministerial act" and seeking to compel the officials "to comply with statutory or constitutional provisions" fall within the "ultra vires" exception to sovereign immunity because they "do not attempt to exert control over the state—they attempt to reassert the control of the state," *Heinrich*, 284 S.W.3d at 372; *see Houston Belt & Terminal Ry. Co. v. City of Hous.*, 487 S.W.3d 154, 164 (Tex. 2016) (clarifying ultra vires standard, citing *Heinrich*, and stating standard "does not create a new vehicle for suits against the state to masquerade as *ultra vires* claims—indeed, our opinion merely reinforces the narrow *ultra vires* principles we have repeatedly announced and endorsed"). Guided by these standards, we turn to our review of the trial court's jurisdiction to consider appellees' claims.

*Did appellees' claims invoke the trial court's jurisdiction?*

We begin with appellees' claims that challenge the constitutionality of provisions of the Texas Tax Code. "[S]overeign immunity is inapplicable when a suit challenges the constitutionality of a statute and seeks only equitable relief." *Patel v. Texas Dep't of Licensing & Regulation*, 469 S.W.3d 69, 75–77 (Tex. 2015); *see City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007) (concluding "that the court of appeals did not err by refusing to dismiss the plaintiffs' claims [against the city] for injunctive relief based on alleged constitutional violations"); *City of*

7

*Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995) (determining that "suits for equitable remedies for violation of constitutional rights are not prohibited"); *see also Central Appraisal Dist. of Rockwall Cty. v. Lall*, 924 S.W.2d 686, 692 (Tex. 1996) (considering and concluding that provision of Tax Code was facially unconstitutional); *Rylander v. Bandag Licensing Corp.*, 18 S.W.3d 296, 303–04 (Tex. App.—Austin 2000, pet. denied) (same); *cf. In re Nestle USA, Inc.*, 359 S.W.3d 207, 212 (Tex. 2012) ("Retrospective monetary claims, even by way of mandamus or declaratory relief, are generally barred by immunity, absent legislative consent."); *Bouillion*, 896 S.W.2d at 150 (observing that "State does not recognize a common law cause of action for damages to enforce constitutional rights").

Because the relevant governmental entity must be made a party to UDJA suits challenging the constitutionality of statutes, the governmental entity's immunity is waived. *See* Tex. Civ. Prac. & Rem. Code § 37.006(b) (requiring attorney general of state to be served with copy of proceeding that involves allegations that statute is unconstitutional and entitling attorney general to be heard); *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 622 & n.3 (Tex. 2011) (recognizing that "state may be a proper party to a declaratory judgment action that challenges the validity of a statute" and UDJA's express waiver of immunity in this context); *Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex. 1994) ("The DJA expressly provides that persons may challenge ordinances or statutes, and that governmental entities must be joined or notified. Governmental entities joined as parties may be bound by a court's declaration on their ordinances or statutes. The Act thus contemplates that governmental entities may be—indeed, must be—joined in suits to construe their legislative pronouncements."); *see also Texas Lottery Comm'n v. First State Bank of*

8

*DeQueen*, 325 S.W.3d 628, 633–34 (Tex. 2010) (holding that trial court properly exercised jurisdiction over claims against commission because claim challenged statute itself and distinguishing ultra vires claims involving government officer's actions or inactions). Thus, we conclude that the trial court correctly determined that it had jurisdiction over appellees' claims challenging the constitutionality of provisions of the Tax Code to the extent that they seek declaratory and injunctive relief.[2]

Turning to appellees' remaining claims, we observe that they, in substance, seek judicial review and relief from the Comptroller's audit and subsequent tax assessment. *See Ex parte Springsteen*, 506 S.W.3d 789, 799 (Tex. App.—Austin 2016, pet. filed) (looking to "claims' underlying substantive nature in order to determine whether the district court had jurisdiction to entertain them"). The resolution of the trial court's jurisdiction to consider these claims is dictated by this Court's opinion in *Sanadco*. In that case, we affirmed the trial court's order that dismissed for lack of jurisdiction all of the taxpayer's counterclaims, which are analogous to appellees' remaining claims. *See* 2015 WL 1478200, at *2–4, 6. The taxpayers were convenience store operators, and they filed counterclaims seeking judicial review and relief from a tax assessment in response to a collection suit by the Comptroller following his audit and assessment of taxes and penalties against the taxpayers. *Id.* at *2–4.[3] As support for the trial court's jurisdiction over their

---

[2] During oral argument, appellants' counsel conceded that the trial court had jurisdiction to consider appellees' claims challenging the constitutionality of statutes.

[3] The taxpayers' counterclaims in *Sanadco* included: (1) the Comptroller's "AP 92 and AP 122" were invalid "administrative rules" because they were not properly promulgated in accordance with the APA; (2) the Comptroller acted ultra vires when he issued AP 92 and AP 122 and authorized their use to estimate convenience store audits; (3) the Comptroller acted ultra vires when he required the use of H.B. 11 data for convenience store audits "'without first ascertaining

claims, similar to appellees' position here, the taxpayers cited section 2001.038 of the APA, the

UDJA, and the ultra vires doctrine, and the taxpayers in that case did not "meet any of the statutory

requirements for a refund claim or protest suit" under chapter 112. *Id.* at *4–5. Because they had

not met the statutory requirements, we concluded that the cited grounds for jurisdiction were

"preempted by Chapter 112 of the Tax Code, which the supreme court has held provides exclusive

remedies for relief from assessed taxes on *any* basis." *Id.* at *4 (citing *In re Nestle*, 359 S.W.3d

at 211).

---

whether the determination can be made from the taxpayer's records'"; (4) "the Comptroller acted ultra vires by authorizing the imposition of a 50% penalty without proof of fraud or of an intent to avoid the tax" as required by section 111.061(b) of the Tax Code; (5) section 111.0042 of the Tax Code was "unconstitutionally vague"; (6) "the Comptroller engaged in an unconstitutional taking when he improperly collected sales and use taxes"; and (7) section 111.022 of the Tax Code was unconstitutional. *Sanadco Inc. v. Office of the Comptroller of Pub. Accounts*, No. 03-11-00462-CV, 2015 WL 1478200, at *3–4 (Tex. App.—Austin Mar. 25, 2015, pet. denied) (mem. op.).

In their pleadings, appellees assert claims analogous to the taxpayers' claims in *Sanadco*, but they also assert a constitutional open courts claim and a claim challenging Hasnat's personal liability under section 111.0611 of the Tax Code. *See* Tex. Const. art. I, § 13; Tex. Tax Code § 111.0611 (personal liability for fraudulent tax evasion). As stated above, the trial court has jurisdiction over appellees' constitutional claims seeking equitable relief, including their open courts claims. *See R Communications, Inc. v. Sharp*, 875 S.W.2d 314, 318 (Tex. 1994) (concluding that trial court had jurisdiction to hear declaratory relief claim that contended section 112.108 of Tax Code was unconstitutional); *Richmont Aviation, Inc. v. Combs*, No. 03-11-00486-CV, 2013 WL 5272834, at *6 (Tex. App.—Austin Sept. 12, 2013, pet. denied) (mem. op.) (concluding that trial court had jurisdiction to consider injunctive and declaratory claims challenging constitutionality of section 112.108 and other provisions of Tax Code).

As to their claim concerning Hasnat's personal liability, appellees in their pleadings contend that Hasnat should be dismissed because he was not joined as a party in the underlying administrative proceeding. *See* Tex. Tax Code § 111.0611 (authorizing comptroller to find individuals to be personally liable for fraudulent tax evasion who are officers and "took an action or participated in a fraudulent scheme or fraudulent plan to evade the payment of taxes due"). Similar to appellees' other claims, however, this claim challenges the tax assessment itself and, thus, appellees were required to satisfy the statutory requirements under chapter 112 to invoke the trial court's jurisdiction over this claim, but they failed to do so.

10

As recognized by this Court in *Sanadco* and the Texas Supreme Court in *Nestle*, the statutory methods for seeking judicial review of tax assessments are protest suits, refund suits, and suits for injunctive relief brought under chapter 112. *See In re Nestle*, 359 S.W.3d at 211; *Sanadco*, 2015 WL 1478200, at *5. These methods, however, require timely payment of taxes due or a sufficient bond before bringing suit. Tex. Tax Code §§ 112.051, .101(a), .151(a). The protest suit statute also requires a written protest to accompany the payment that states "fully and in detail each reason for recovering the payment." *Id*. § 112.051(a)–(b). Similarly, suits for injunctive relief under chapter 112 require the taxpayer to file with "the attorney general not later than the fifth day before the date the action is filed a statement of the grounds on which the order or injunction is sought." *Id.* § 112.101(a)(1).

Although appellees participated in the administrative proceeding unlike the taxpayers in *Sanadco*, they nonetheless failed to prepay the tax assessment, post a bond, or comply with the pre-suit notice requirements before bringing suit. *See id.* §§ 112.051(b), .101(a)(1). Appellees also do not challenge the constitutionality of the pre-suit notice requirements. Thus, even if the prepayment provisions that appellees challenge are unconstitutional, appellees still failed to comply with statutory requirements for bringing suit under chapter 112 as they do not dispute that they did not comply with the pre-suit notice requirements. As we explained in *Sanadco* when facing claims by a taxpayer who did not comply with the chapter 112 statutory requirements for bringing suit,

> [The taxpayer] may not now attempt to circumvent the statutory prerequisites to taxpayer suits by casting its various challenges to the assessed taxes and penalties as counterclaims seeking declaratory and injunctive relief to the Comptroller's collection actions when [the taxpayer] could and should have availed itself of the exclusive statutory taxpayer-suit procedures. While [the taxpayer] frames its

11

declaratory requests in terms of the validity or constitutionality of "rules," statutes, and alleged ultra vires actions, it is not merely seeking to obtain such declarations but to be relieved, thereby, of its tax assessment and penalty. Chapter 112 of the Tax Code provides an exclusive remedy therefor, and *Nestle* explicitly prohibits any attempt at relief from assessed sales taxes on *any* basis except as provided in the chapter.

2015 WL 1478200, at *5; *see also Bell v. Moores*, 832 S.W.2d 749, 754 (Tex. App.—Houston [14th Dist.] 1992, writ denied) (noting that trial court determines jurisdiction at time suit is filed and that generally "[j]urisdiction cannot subsequently be acquired while the suit is pending"). Following our analysis and holding in *Sanadco*, we similarly conclude on this record that appellees may not circumvent the statutory requirements in chapter 112 of the Tax Code to invoke the trial court's jurisdiction by casting their challenges to the Comptroller's tax assessment as ultra vires claims or claims brought under the APA or the UDJA. *See Sanadco*, 2015 WL 1478200, at *5–6; *see also Ex parte Springsteen*, 506 S.W.3d at 799 (looking to "'claims' underlying substantive nature" to determine subject matter jurisdiction).

Appellees urge us not to follow the analysis and holding of this Court's opinion in *Sanadco*, contending that our interpretation of the *Nestle* opinion was wrong. We, however, are bound to follow this Court's opinions. *See Glassman v. Goodfriend*, 347 S.W.3d 772, 781 & n.8 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (en banc) (explaining horizontal stare decisis); *Chase Home Fin., L.L.C. v. Cal W. Reconveyance Corp.*, 309 S.W.3d 619, 630 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("Absent a decision from a higher court or this court sitting en banc that is on point and contrary to the prior panel decision or an intervening and material change in the statutory law, this court is bound by the prior holding of another panel of this court.").

We further observe that our opinion in *Sanadco* aligns with well-established principles. For example, to be cognizable, an ultra vires claim must challenge the government official's authority, not whether the government official made an incorrect decision. *See Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, 307 S.W.3d 505, 517–18 (Tex. App.—Austin 2010, no pet.) (concluding that "allegations that TCEQ reached an incorrect or wrong result when exercising its delegated authority" did not invoke "district court's inherent jurisdiction to remedy ultra vires agency actions"); *Beacon Nat'l Ins. Co. v. Montemayor*, 86 S.W.3d 260, 267 (Tex. App.—Austin 2002, no pet.) (concluding that "whether [agency's] interpretation [of insurance policy promulgated by agency] is correct or incorrect cannot be the factor that confers jurisdiction"); *see also Ex parte Springsteen*, 506 S.W.3d at 799 (observing that Texas Supreme Court has repudiated notion that "UDJA confers some broader right to sue government to obtain 'statutory construction' or a 'declaration of rights'"). Appellees' ultra vires claims go to the merits of the audit—whether the Comptroller got it wrong—and not to his authority to conduct the audit and assess taxes. And any injunctive relief as to the Comptroller's tax assessment against appellees would be retrospective and, thus, cannot form the basis of a viable ultra vires claim. *See Heinrich*, 284 S.W.3d at 375–76 (explaining that generally "claimant who successfully proves an ultra vires claim is entitled to prospective injunctive relief, as measured from the date of injunction").

Section 2001.038 of the APA similarly is not available to appellees to bring their rule challenge claims as to AP 134 and H.B. 11 because these claims seek relief from the tax assessment itself. *See, e.g., Combs v. Entertainment Publ'ns, Inc.*, 292 S.W.3d 712, 723–24 (Tex. App.—Austin 2009, no pet.) (allowing claims for injunctive and declaratory relief because taxpayer was "not

13

seeking declaratory relief regarding the tax itself, but regarding the validity of the rule promulgated by the Comptroller in violation of the APA"); *Rutherford Oil Corp. v. General Land Office*, 776 S.W.2d 232, 235 (Tex. App.—Austin 1989, no writ) ("The purpose of [former version of section 2001.038] is to obtain a final declaration of a rule's validity before the rule is applied."). Further section 2001.171 of the APA does not provide an independent right of judicial review of the tax assessment because chapter 112 expressly authorizes judicial review but provides statutory requirements for bringing suit. *See Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 198 (Tex. 2004) (concluding generally that section 2001.171 of APA provides limited waiver of sovereign immunity when agency's enabling statute does not specifically authorize or prohibit judicial review of agency decision).

Following our analysis and holding in *Sanadco*, we conclude that the trial court does not have jurisdiction over appellees' remaining claims and sustain the Comptroller's issues as to those claims.[4]

---

[4] During the pendency of this appeal, appellees paid the outstanding tax liability for the relevant audit period. Among their arguments, appellants argue that this payment mooted appellees' claim for injunctive relief under section 112.101 of the Tax Code. *See* Tex. Tax Code § 112.101. Because we have concluded that the trial court does not have jurisdiction over appellees' claims brought under chapter 112 based on their failure to comply with the pre-suit notice requirements for bringing suit, we need not address this additional jurisdictional argument. *See* Tex. R. App. P. 47.1. We also need not reach appellees' request to abate or enjoin appellants' collection efforts during the pendency of this appeal because of appellees' payment. *Id.* We further do not consider appellees' request to vacate the underlying tax assessment in this interlocutory appeal from the denial of appellants' plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8).

## CONCLUSION

We conclude that the trial court properly denied appellants' plea to the jurisdiction with respect to appellees' claims challenging the constitutionality of sections of the Tax Code to the extent that they seek equitable relief. We, however, reverse the trial court's order denying the Comptroller's plea to the jurisdiction with respect to appellees' remaining claims and dismiss those claims for lack of subject matter jurisdiction.

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Bourland

Affirmed in Part; Reversed and Dismissed in Part

Filed:  April 13, 2017

15